**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHNNY ROBERT GARCIA,           )     No. C 07-0438 MMC (PR)
                                )
              Plaintiff,        )     **ORDER DENYING PLAINTIFF'S**
                                )     **MOTIONS TO COMPEL DISCOVERY;**
       v.                       )     **DENYING PLAINTIFF'S MOTION FOR**
                                )     **SUMMARY JUDGMENT; GRANTING**
H. SOULE, et al.,               )     **DEFENDANTS' MOTION FOR**
                                )     **SUMMARY JUDGMENT**
              Defendants.       )
_____)     **(Docket Nos. 28, 29, 30, 31, 49 & 52)**

On January 23, 2007, plaintiff, a California prisoner incarcerated at Pelican Bay State

Prison ("PBSP") and proceeding pro se, filed the above-titled civil rights action under 42

U.S.C. § 1983 against various PBSP employees.  Thereafter, the case was referred to the

Northern District's Pro Se Prisoner Mediation Program, but the parties were unable to reach

a settlement agreement.  Now pending before the Court are the parties' respective motions

for summary judgment, both of which have been fully briefed.[1]  Also pending are plaintiff's

motions to compel discovery.

**FACTUAL BACKGROUND[2]**

In 1992, plaintiff was sentenced to a life term in state prison.  In 1994, he was

_____

[1]Together with their summary judgment motion, defendants have filed a request for permission to exceed the twenty-five page limit.  Good cause appearing, defendants' request is hereby granted.

[2]The facts in the following section are undisputed and are drawn from the parties' evidence submitted in support of and in opposition to the parties' motions for summary judgment.

**United States District Court**
For the Northern District of California

1  validated as a member of the Northern Structure ("NS") prison gang, and was sentenced to an

2  indeterminate term of confinement in the PBSP Security Housing Unit ("SHU").  In 2000,

3  2003 and 2005 plaintiff's gang status was reviewed, and on each occasion he was found to be

4  an active NS gang member.

5      Under California Code of Regulations tit. 15 ("CCR"), §§ 3341.5(c)(5) and 3378, an

6  inmate housed in the SHU as a gang member may be categorized as "inactive" if the inmate

7  has not been involved in gang activity for a minimum of six years.  Plaintiff's 2005 inactive

8  status review resulted in his continued retention in the SHU based on three source items that

9  were less than six years old.[3]  Those items consisted of two CDC 128-B forms ("chronos")[4]

10  documenting plaintiff's calling out to validated prison gang members by their aliases, and a

11  confidential memorandum containing a roster of NS gang members, including plaintiff, listed

12  by their aliases and directing members to "shout out" to other members by their aliases.

13  (Declaration of G. Stewart in Support of Motion for Summary Judgment ("Stewart Decl.") ¶

14  9 Exs. B-D.)

15      On October 30, 2006, plaintiff filed in this court a civil rights action pursuant to 42

16  U.S.C. § 1983, challenging the constitutionality of the 2005 decision by PBSP prison

17  officials to continue plaintiff's status as an active NS gang member and retain him in the

18  SHU for an indeterminate term.  See Garcia v. Stewart, et al., No. C 06-6735 MMC (PR).[5]

19  Specifically, plaintiff claimed that his continued retention in the SHU violated his right to

20  due process and was based on actions by prison officials that had been taken in retaliation for

21  plaintiff's exercise of his First Amendment rights.  The defendants in that action moved for

22  summary judgment and, after full briefing by the parties, the Court granted defendants'

23  motion in a detailed order that reviewed the factual and procedural history of plaintiff's

24  _____

25      [3]A documentation of gang activity is known as a "source item."

26      [4]CDC Form 128-B general chronos are used by prison officials "to document
27  information about inmates and inmate behavior."  CCR § 3000.

28      [5]Defendants' request that the Court take judicial notice of plaintiff's prior action is
hereby granted.

**United States District Court**
For the Northern District of California

retention in the SHU based on his NS gang status.  In particular, the Court found that the 2005 inactive status review plaintiff was challenging satisfied the requirements of due process because the review was timely and the decision to retain plaintiff in the SHU was supported by sufficient evidence, specifically, the two chronos and the confidential memorandum noted above.  Additionally, the Court found plaintiff had failed to present evidence that raised a triable issue of fact as to whether the motive behind the inactive status review investigations and recommendations was retaliatory. (See id., Order Granting Summary Judgment filed Mar. 16, 2009 at 13:14-26-21:23.)

Plaintiff has not had a subsequent inactive status review since the September 2005 review, and, based on the most recent of the source items relied upon at that review, he is not eligible for another inactive status review until April 2010.  (Stewart Decl. ¶ 8.)

In 2008, plaintiff decided to disassociate from the NS gang and initiated the debriefing process.  See CCR § 3378.1(a).  Once an inmate has successfully debriefed and been validated as a gang dropout, he will be considered for release from the SHU.  CCR § 3341.5(c)(4).  The debriefing process consists of two steps.  The first involves prison officials' interviewing the inmate to determine whether the inmate's renunciation of gang membership is genuine.  CCR § 3378.1(b).  After conclusion of the interview phase of the debriefing process, there is a period of observation of the inmate in a special unit where other debriefing inmates are housed and observed.  CCR § 3378.1(c).  Once the observation phase has been successfully completed by an inmate, prison officials submit a packet of information to the Office of Correctional Safety with a recommendation that the inmate be validated as a dropout.  (Declaration of A. Murphy in Support of Motion for Summary Judgment ("Murphy Decl.") ¶ 8.)  If the Office of Correctional Safety agrees with the recommendation, the inmate's validated gang dropout status is confirmed.  (Id.)  At the time defendants filed their instant motion for summary judgment, plaintiff had successfully completed the interview phase of the debriefing process by admitting his long-standing association with the NS gang and providing extensive and detailed information about the NS gang, its members, and its activities.  (Id. ¶¶ 9-10.)

United States District Court
For the Northern District of California

Prior to his initiating the debriefing process, plaintiff filed the instant action, which is based on PBSP prison officials' placement of documents in plaintiff's central prison file in 2006, which documents note plaintiff's contacts and interactions with other inmates and the possible connection of those events to gang activity. Specifically, the documents consist of two chronos and a Rules Violation Report ("RVR") drafted by defendant correctional officer H. Soule ("Soule") on, respectively, April 19, May 10 and May 20, 2006, and one chrono drafted by defendant correctional officer M. Jones ("Jones") on August 29, 2006. The documents describe the observations of Soule and Jones concerning plaintiff's shouting out to other inmates in Spanish and using those inmates' gang aliases. (Compl. Exs. E-H.) Plaintiff claims information in the documents is false and that defendants, in violation of due process, placed such information in his file in order that it can be used in the future to continue plaintiff's retention in the SHU as an active NS gang member. He further alleges defendants falsified the information in retaliation for plaintiff's assertion of his First Amendment rights, and that defendants conspired with one another to violate plaintiff's constitutional rights. Additionally, plaintiff alleges that defendants D. Kays ("Kays") and D. Higgerson ("Higgerson"), both members of the Gang Investigation Unit at PBSP, violated his right to due process by implementing a policy that requires correctional staff to document vague and inconsequential evidence of inmate activities on a specially designated pre-printed CDC 128-B general chrono form, which evidence is later used to find the inmate has engaged in gang activity.

## DISCUSSION

I.      Plaintiff's Motions to Compel Discovery

On November 9, 2008, plaintiff served on defendants, both collectively and individually, requests for production of documents and requests for admissions. (Pl.'s Mot. to Compel (Docket No. 30) at 1:11-16.) Defendants responded to plaintiff's requests on December 22, 2008. (Id. & Pl.'s Req. Admiss. (Docket No. 31) Ex. 2.)

Thereafter, plaintiff sent defendants a request to meet and confer concerning defendants' responses to the requests for documents and requests for admissions. (Docket

United States District Court
For the Northern District of California

No. 31 Ex. 3.)  Plaintiff's letter explained that defendants had failed to provide him with his requests for a "pre-printed 128B chrono" and "any other documents" implying or requiring staff to document certain types of communications between inmates either as gang or gang-related activity.  (Id. Ex. 3 at 1.)  As noted above, the existence of the pre-printed chrono form or similar document is relevant to plaintiff's claim that defendants Kays and Higgerson have implemented a policy that requires correctional officers to use the chrono form to document inmate activities that are later used to find inmates have engaged in gang-related activity.  In his meet-and-confer letter, plaintiff wrote that the pre-printed chrono form could be found in the log book in the gunner's control booth in Facility C on block 7.  (Id. Ex. 3 at 1-2.)  On January 15, 2009, counsel for defendants responded by letter to plaintiff, stating counsel would further investigate the existence and location of a pre-printed chrono form.  (Id. Ex. 4.)

On April 16, 2009, plaintiff filed, together with his motion for summary judgment, a motion to compel discovery, a motion for production of documents, and a "Motion/Request for Admissions."  Specifically, plaintiff seeks an order compelling production of the documents referenced in his meet-and-confer letter, as well as amended answers to his requests for admissions pertaining to the existence of the same pre-printed chrono form or similar document.  (Docket Nos. 29 & 31.)

On May 7, 2009, defendant Soule informed defendants' counsel that he had discovered a "CDC-128(B) Informative Chrono" form.  (Declaration of L. Rivo in Support of Defendants' Opposition to Plaintiff's Motion to Compel  ("Rivo Decl.") ¶ 4 & Ex. AGO-001.)  On May 15, 2009, counsel for defendants received the document, and on May 18, 2009, served the document on plaintiff.  (Id ¶¶ 3-4.)  That same date, defendants filed their opposition to plaintiff's motion to compel, in which opposition they argue that the motion should be denied because they have responded to plaintiff's requests for admissions in accordance with the Federal Rules of Civil Procedure, and because they do not have in their custody or control any of the documents plaintiff seeks.  In particular, defendants state they have searched for the documents and sent plaintiff the one document that might be

responsive to his request, specifically, the above-noted CDC-128(B) Informative Chrono form.

In his reply to defendants' opposition plaintiff objects that the document he received from defendants' counsel is "not the one being sought by plaintiff."  (Reply (Docket No. 42) at 1.)  Specifically, plaintiff states:

> Although it is a pre-chrono [sic], this AGO-001 serves as a format to staff on how best to write a 128-B chrono upon an inmate who is involved in perceived gang acts (i.e. calling out to other inmates or giving salutations, etc.) This is also a newly updated pre-printed chrono used by staff.  The document in question differs from AGO-001 in that it is a direct order from a superior internal department . . . . Although the document which plaintiff witnessed in the past looked like a short memorandum, defendant Soule has repeatedly referred to it as a "pre-printed 128-B chrono."

(Id. at 1-2.)

The Court addresses each of plaintiff's motions in turn.

A.    Requests for Admissions

In his motion to compel responses to his requests for admissions, plaintiff states that defendants failed to answer his requests for admissions relating to the pre-printed CDC 128-B chrono form.  In particular, plaintiff asked defendants to admit the existence of a pre-printed CDC 128-B chrono form that had been generated by the PBSP prison gang unit or one of Soule's superiors, which form required that inmate communications be written up as gang-related activity and had been used to document plaintiff's activities.  (Docket No. 31 Ex. 2.)  Defendants respond that they fully and sufficiently responded to plaintiff's requests for admissions by setting forth objections to the requests and the grounds therefor, in accordance with Federal Rule of Civil Procedure 36(a)(3)-(5), and also making further inquiry into plaintiff's requests.  Specifically, defendants assert, they properly responded to plaintiff's requests by first objecting that the requests either were indiscernible, without reasonable limitation as to time or scope, compound or vague, and then by stating they had made reasonable inquiry and were unable to admit or deny whether a form such as plaintiff described had been generated.  (See Def. Soule's Resp. to Pl.'s Req. for Admiss. Nos. 11-13; Def. Jones's Resp. to Pl.'s Req. for Admiss. Nos. 4, 6, 7; Def. Kays's Resp. to Pl.'s Req. for

1    Admiss. Nos. 1-7; Def. Higgerson's Resp. to Pl.'s Req. for Admiss. Nos. 1-7.)   Plaintiff has

2    not responded to defendants' arguments.

3          Based on the above, the Court finds defendants have presented evidence sufficient to

4    show they fully complied with their obligation, in accordance with the Federal Rules of Civil

5    Procedure, to respond to plaintiff's requests for admissions; plaintiff has not presented

6    evidence to the contrary.  Accordingly, the motion to compel further responses to the

7    requests for admissions will be denied.

8          B.     Requests for Production of Documents

9          Plaintiff moves to compel production of the above-described CDC 128-B chrono

10   form, which form plaintiff contends can be found in the log book in the gunner's control

11   booth in Facility C on block 7.  Alternatively, plaintiff moves to compel "'all' documents

12   (i.e. memos, chronos, internal directives, etc.) within the block's control booth or office area

13   for inspection."  (Reply at 2.)

14         Defendants oppose plaintiff's motion on the ground that they have complied with the

15   Federal Rules of Civil Procedure by producing those documents responsive to plaintiff's

16   requests that are in their "possession, custody or control," see Fed. R. Civ. P. 34(a)(1), and

17   also by fulfilling their obligation to conduct a reasonable inquiry into the location of the

18   documents requested.  See Fed. R. Civ. P. 26(g).  In support of their opposition, defendants

19   present the following evidence: (1) defendants, as set forth in their counsel's response to

20   plaintiff's meet-and-confer letter, investigated the existence and location of documents in

21   response to plaintiff's request for production of documents (Docket No. 31 Ex. 4); (2)

22   thereafter, defendants Jones, Kays and Higgerson searched for the documents, but were

23   unable to find them (Decl. of M. Jones in Supp. of Defs.' Opp'n to Pl.'s Mot. to Compel ¶ 3;

24   Decl. of D. Kays in Supp. of Defs.' Opp'n to Pl.'s Mot. to Compel ¶ 3; Decl. of D. Higgerson

25   in Supp. of Defs.' Opp'n to Pl.'s Mot. to Compel ¶ 3); (3) PBSP litigation coordinator Bill

26   Barlow contacted officers and supervisors in Facility C in an effort to locate the alleged pre-

27   printed CDC 128-B chrono form, but was unable to locate the form (Decl. of M. Barlow in

28   Supp. of Defs.' Opp'n to Pl.'s Mot. to Compel ¶ 5); (4) Barlow also looked for any

United States District Court
For the Northern District of California

1  documents that would require staff to perceive all inmate communication within a unit to be

2  gang-related, and was unable to locate any such documents (id. ¶ 6); and (5) defendant Soule

3  conducted an additional investigation and found the CDC-128(B) Informative Chrono form,

4  AGO-001, which document was served on plaintiff on May 18, 2009 (Rivo Decl. ¶ 4.)

5       In his reply to defendants' opposition, plaintiff, as noted above, asserts that the CDC-

6  128(B) Informative Chrono form is not responsive to his request, and maintains that the

7  document he is seeking is one that "plaintiff witnessed in the past," that "looked like a short

8  memorandum," and that Soule has repeatedly referred to [ ] as a 'pre-printed 128-B chrono.'"

9  (Docket No. 42 at 2.)  He further argues that if defendants are unable to provide him with the

10 document he seeks, the Court should order defendants to allow plaintiff access to "'all'

11 documents (i.e. memos, chronos, internal directives, etc.) within the block's control booth or

12 office area for inspection." (Id.)

13      Plaintiff's motion to compel will be denied as he has presented no evidence that shows

14 either that the document he seeks actually exists or that it is in the possession, custody or

15 control of defendants.  Specifically, defendants and the litigation coordinator at PBSP have

16 sworn, under penalty of perjury, that they have searched for the pre-printed CDC 128-B

17 chrono to which plaintiff refers, as well as for other documents that might be responsive to

18 plaintiff's request, but have been unable to find any such documents.  Further, in an attempt

19 to respond to plaintiff's request, defendant Soule has produced the CDC 128-B Informative

20 Chrono form, AGO-001, for plaintiff's review.  By contrast, plaintiff's contention that,

21 despite the representations noted above, defendants have not searched diligently enough to

22 find the documents he seeks are speculative and unsupported by the record.

23      Accordingly, the Court will not compel defendants to search further for documents

24 responsive to plaintiff's requests or to provide plaintiff with access to all documents within

25 the block's control booth or office area for inspection.  Moreover, the Court finds that the

26 documents plaintiff seeks are not necessary to the Court's ruling on the parties' motions for

27 summary judgment.

28

**United States District Court**
For the Northern District of California

1  II.    Plaintiff's and Defendants' Motions for Summary Judgment

2        A.    Legal Standard

3        Summary judgment is proper where the pleadings, discovery, and affidavits show

4  there is "no genuine issue as to any material fact and that the moving party is entitled to

5  judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those that may affect

6  the outcome of the case.  See Anderson v. Liberty Lobby, Inc. Anderson, 477 U.S. 242, 248

7  (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable

8  jury could return a verdict for the nonmoving party.  Id.

9        It is the moving party's burden to establish that no genuine issue of material fact exists

10  and that the moving party is entitled to judgement as a matter of law.  British Airways Board

11  v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978), cert. denied, 440 U.S. 981 (1979).  Where

12  the defendant is the moving party, the court will grant summary judgment against a plaintiff

13  "who fails to make a showing sufficient to establish the existence of an element essential to

14  that [plaintiff's] case, and on which that party will bear the burden of proof at trial . . . since a

15  complete failure of proof concerning an essential element of the nonmoving party's case

16  necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-

17  23 (1986).

18        Where the plaintiff is the moving party, and bears the burden of proof at trial – as on a

19  claim for relief – the plaintiff's burden of proof on the motion is to produce evidence

20  sufficient to demonstrate that no reasonable trier of fact could find for the defendant.  S. Cal.

21  Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003).  A plaintiff must

22  demonstrate that the evidence presented, taken as a whole, establishes beyond controversy

23  every essential element of the claim.  Id.  A defendant can defeat a plaintiff's motion for

24  summary judgment by demonstrating that the evidence, taken as a whole, could lead a

25  rational trier of fact to find in his favor.  Id.  In so doing, the party opposing summary

26  judgment must direct the court's attention to specific triable facts.  Id. at 889.

27        For purposes of summary judgment, the court must view the evidence in the light most

28  favorable to the nonmoving party; if the evidence produced by the moving party conflicts

9

1  with evidence produced by the nonmoving party, the court must assume the truth of the

2  evidence submitted by the nonmoving party.  Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th

3  Cir. 1999).  The court's function on a summary judgment motion is not to make credibility

4  determinations or weigh conflicting evidence with respect to a disputed material fact.  T.W.

5  Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

6        B.    Plaintiff's Claims

7              1.    Due Process Violation

8        Plaintiff claims prison officials have placed in plaintiff's central prison file false

9  information, specifically, two chronos and a RVR drafted by defendant Soule and one chrono

10  drafted by defendant Jones, "that will be relied upon, years later, and result in his denial of

11  release from the prison's Security Housing Unit (SHU)."  (Compl. at 7:19.)   Plaintiff

12  maintains that when those events occur, he "will have" been denied his right to due process.

13  (Id. at 19:16.)

14        Defendants argue plaintiff's claim is without merit because he has shown no real,

15  concrete injury or the deprivation of a liberty interest based on any prison official's reliance

16  on the subject documents.  Rather, they assert, prison officials have never used the

17  documents to adversely impact the conditions of plaintiff's confinement.  In that regard,

18  defendants point out that the Court, in plaintiff's prior action, has already found plaintiff's

19  current retention in the SHU, which placement is based on his 2005 inactive status review, is

20  not constitutionally infirm, and because plaintiff does not qualify for another inactive status

21  review until at least April 2010, plaintiff cannot show the documents, which were created and

22  placed in plaintiff's central prison file in 2006, have been relied upon to keep him in the

23  SHU.  Defendants further argue that because plaintiff is in the process of debriefing, it is

24  likely he will be released from the SHU and will not have to face another inactive status

25  review.

26        In his opposition, plaintiff does not does not dispute defendants' assertion that the

27  documents have not yet been used by prison officials to adversely impact the conditions of

28  his confinement.  Rather, he argues there is no guarantee that he will successfully complete

10

the debriefing process or, if he does, that he will not be returned to the SHU for an infraction, at which point defendants will be able to use the documents to classify him once again as an active NS gang member.

The Court finds plaintiff's claim that the false documents will be used to violate his right to due process is not ripe for review.  "The ripeness doctrine prevents courts, through avoidance of premature adjudication, from entanglement in theoretical or abstract disagreements that do not yet have a concrete impact on the parties."  18 Unnamed "John Smith" Prisoners v. Meese, 871 F.2d 881, 883 (9th Cir. 1989).  The ripeness inquiry contains both a constitutional and a prudential component.  Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc).  To satisfy the constitutional component there must exist a constitutional case or controversy; the issues must be "definite and concrete, not hypothetical or abstract."  Id. at 1139 (internal quotation and citation omitted).  An alleged injury that is too imaginary or speculative will not support jurisdiction. Id.  In particular, an issue is not ripe for adjudication if it depends on "contingent future events that may not occur as anticipated, or indeed not occur at all."  18 Unnamed John Smith Prisoners, 871 F.2d at 883 (internal quotation and citation omitted).  Here, as noted, plaintiff has not presented evidence that shows prison officials have relied on the subject documents to retain him in the SHU.  Rather, his due process claim rests solely on speculation as to what might occur at plaintiff's April 2010 inactive status review if he does not successfully debrief or, alternatively, what might occur if he does successfully debrief and is then returned to the SHU for an infraction.  Consequently, plaintiff's claim that the false documents will be used to retain him in the SHU is not ripe for adjudication.

Plaintiff further argues that even if prison officials have not yet relied upon the documents to plaintiff's disadvantage, defendants nevertheless have violated his right to due process by falsifying the documents and placing them in plaintiff's central prison file.  In response, defendants argue that even if plaintiff could prove the documents contain false information, the mere placement of such documents in plaintiff's file does not rise to the level of a due process violation.

United States District Court
For the Northern District of California

The requirements of due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. Board of Regents v. Roth, 408 U.S. 564, 569 (1972). A protected liberty interest may be created either by the Due Process Clause of its own force or by states through statutes or regulations. Sandin v. Connor, 515 U.S. 472, 483-84 (1995). Where prison conditions are at issue, a change in conditions so severe as to affect the sentence imposed in an unexpected manner implicates the Due Process Clause itself, whether or not such change is authorized by state law. Id. at 484. Additionally, a deprivation authorized by state law that is less severe or more closely related to the expected terms of confinement may amount to deprivation of a protected liberty interest, provided such deprivation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," id., or "will inevitably affect the duration of [a] sentence," id. at 487.

The inaccuracy of records compiled or maintained by the state is not, standing alone, sufficient to state a claim of constitutional injury arising directly under the Due Process Clause. See Velasquez v. Woods, 329 F.3d 420, 421-22 (5th Cir.2003) (finding no constitutional right to expunge false information from prison file); see also Paul v. Davis, 424 U.S. 693, 711-14 (1976) (holding plaintiff could not challenge in § 1983 action dissemination of information about shoplifting arrest because no protected interest in reputation). Additionally, a prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct that may result in the deprivation of a protected liberty interest. See Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986). Rather, as long as a prisoner is afforded procedural due process at a hearing charging him with alleged violations of prison regulations, allegations of fabricated charges fail to state a claim under § 1983. See Hanrahan v. Lane, 747 F.2d 1137, 1140-41 (7th Cir. 1984).

Here, the placement of the documents in plaintiff's file does not rise to the level of a constitutional violation. Further, if and when the alleged false information is relied upon by prison officials to retain plaintiff in the SHU as a member of the NS gang, plaintiff will have

United States District Court
For the Northern District of California

1    the opportunity, in accordance with the dictates of procedural due process, to challenge the

2    reliability of such evidence at his inactive status review and, if he believes the requirements

3    of due process were not met at such review, to seek a remedy through the prison grievance

4    process.  At this time, however, the likelihood that plaintiff will either be retained or

5    recommitted to the SHU based on the alleged false information is "simply too attenuated to

6    invoke the procedural guarantees of the Due Process Clause."  Sandin, 515 U.S. at 487.

7            Additionally, plaintiff has not presented evidence shows that the inclusion of allegedly

8    false information in his central prison file is the type of atypical, significant deprivation that

9    would constitute a liberty interest under Sandin.  Notably, the Ninth Circuit has found no

10   protected liberty interest under circumstances where an immediate and considerably greater

11   impact on a prisoner's confinement has been shown.  See, e.g., Myron v. Terhune, 476 F.3d

12   716, 718-19 (9th Cir. 2007) (holding higher classification level for prisoner and refusal to

13   allow prisoner to publish and distribute inmate publication not atypical and significant

14   deprivations); Mitchell v. Dupnik, 75 F.3d 517, 523 (9th Cir. 1996) (holding violation of jail

15   regulation requiring inmates be present when legal papers searched not dramatic departure

16   from basic conditions of incarceration sufficient to create liberty interest); Mujahid v. Meyer,

17   59 F.3d 931, 932 (9th Cir. 1995) (holding no protected liberty interest implicated when

18   inmate placed in disciplinary segregation for fourteen days).  Further, plaintiff has not

19   presented evidence that shows the placement of false information in his central prison file

20   will "inevitably affect the duration of his sentence."  Sandin, 515 U.S. at 487.

21           Based on the above, the Court concludes plaintiff's claim that defendants will rely on

22   the alleged false documents for purposes either of retaining him in, or returning him to, the

23   SHU is not ripe for review, and that plaintiff has failed to create a triable issue with respect to

24   whether defendants have violated his right to due process by allegedly placing false

25   information in his central prison file.  Accordingly, summary judgment will be granted in

26   favor of defendants on plaintiff's due process claim.  Further, as plaintiff has not carried his

27   burden on summary judgment to demonstrate that the evidence presented establishes beyond

28   controversy every essential element of his due process claim, plaintiff's motion for summary

1    judgment on such claim will be denied.

2            2.    Retaliation

3        Plaintiff claims that defendants Soule and Jones placed the above-described

4    documents in his central prison file in retaliation for plaintiff's expression of his First

5    Amendment rights.

6        Retaliation by a state actor for the exercise of a constitutional right is actionable under

7    42 U.S.C. § 1983.  Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977).

8    "Within the prison context, a viable claim of First Amendment retaliation entails five basic

9    elements: (1) An assertion that a state actor took some adverse action against a prisoner (2)

10   because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

11   exercise of his First Amendment rights, and (5) the action did not reasonably advance a

12   legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

13   The prisoner must prove all the elements of a viable retaliation claim, including the absence

14   of legitimate correctional goals for the conduct of which he complains.  Pratt v. Rowland, 65

15   F.3d 802, 806 (9th Cir. 1995).

16       For purposes of any type of retaliation claim, a plaintiff must show a causal

17   connection between a defendant's retaliatory animus and a subsequent injury.  Hartman v.

18   Moore, 547 U.S. 250, 259 (2006).  The requisite causation must be but-for causation, i.e.,

19   without the prohibited animus, the adverse action would not have been taken.  Id. at 260.

20   Upon a prima facie showing of retaliatory harm, the burden shifts to the defendant official to

21   demonstrate that even without the impetus to retaliate he would have taken the action

22   complained of.  Id.  If there is a finding that retaliation was not a but-for cause of the action

23   of which the plaintiff complains, the claim fails for lack of causal connection between

24   unconstitutional motive and resulting harm, despite proof of retaliatory animus in the

25   official's mind.  Id.  "It may be dishonorable to act with an unconstitutional motive and

26   perhaps in some instances be unlawful, but action colored by some degree of bad motive

27   does not amount to a constitutional tort if that action would have been taken anyway."  Id.

28

United States District Court
For the Northern District of California

14

United States District Court
For the Northern District of California

a.      <u>Administrative Appeals</u>

In support of his retaliation claim, plaintiff asserts defendant Soule drafted the April 19 and May 10, 2006 chronos and the May 20, 2006 RVR because plaintiff had filed administrative appeals against Soule.  (Compl. 28-29.)  Defendants argue that plaintiff cannot show Soule acted "because of" such conduct by plaintiff, as the timing of Soule's acts shows such conduct could not have been motivated by plaintiff's appeals.  Specifically, defendants have presented evidence showing that Soule drafted his first chrono on April 19, 2006, whereas plaintiff's first appeal as to Soule was not submitted until April 27, 2006.  (Compl. at 8-9 & Exs. E-G.)  Similarly, the undisputed evidence shows plaintiff's second appeal concerning Soule was not submitted until May 29, 2006, well after Soule had drafted the subject chronos and RVR.

Based on the above, the Court finds plaintiff has not presented evidence sufficient to create a triable issue with respect to plaintiff's claim that Soule drafted the April 19, 2006 chrono in retaliation for plaintiff's subsequently-filed April 27, 2006 administrative appeal, or to create a triable issue with respect to plaintiff's claim that when Soule drafted the two chronos and the RVR, all of which were drafted no later than May 20, 2006, he did so in retaliation for plaintiff's subsequently-filed May 29, 2006 appeal.

b.      <u>Personal Animus</u>

Plaintiff next asserts that Soule and Jones must have documented plaintiff's conduct as gang-related because of personal animus against plaintiff.  (Pl.'s Mot. Summ. J. at 8.)  Defendants argue that plaintiff has not presented evidence that defendants' actions were motivated by retaliatory intent and that even if he could present such evidence, he cannot show the alleged retaliatory motives of Soule and Jones were the "but-for" cause of the placement of the chronos and RVR in plaintiff's central prison file.

In particular, defendants assert that neither retaliatory motive nor but-for causation can be shown by defendants' having documented plaintiff's conduct, because section 72010.7.2. of the Department Operations Manual for the Department of Corrections and Rehabilitation ("DOM") requires correctional officers to document information regarding "[each] inmate's

United States District Court
For the Northern District of California

relationships with fellow inmates, behavior, personal cleanliness, general attitude, and personality." (Declaration of Damon McClain in Support of Motion for Summary Judgment ("McClain Decl.") Ex. I.) Further, defendants argue, it was not unreasonable for Soule and Jones to document plaintiff's conduct, specifically, plaintiff's shouting out to validated NS gang members, as plaintiff at the time was a validated NS gang member, such behavior is known to be gang-related, and the same type of behavior previously had been relied upon to continue plaintiff's active gang status. Moreover, defendants assert, the documents do not evidence a retaliatory motive or but-for causation because they are consistent with previous chronos drafted by other correctional officers about plaintiff's suspected gang behavior, which documents the Court determined in plaintiff's prior action were not retaliatory.

In support of their argument, defendants have submitted the declaration of G. Stewart, a PBSP Correctional Counselor I and former Gang Investigator Sergeant, in which declaration Stewart describes the practices of the NS gang. In particular, Stewart states the following:

> The Gang Investigation Unit has learned through interviews with inmates, Northern Structure gang members who have participated in the debriefing process, and confiscated materials that the Northern Structure prison gang requires its members and associates to account for their movement in the building by shouting to other Northern Structure members. This activity is considered a type of role call for the gang and is used to account for the whereabouts of gang members in the building. These roll calls are often accomplished by shouting from pod to pod in a given building. The Gang Investigation Unit has also learned that those in bad standing with the Northern Structure prison gang are excluded from such roll calls. Accordingly, Northern Structure gang members can let other Northern Structure members or associates know that they are in good standing with the gang by shouting to them from pod to pod. Likewise, a gang member or associate who is uncertain about his standing in the Northern Structure might confirm whether he remains in good standing by shouting out to other gang members to see if they respond to him.

> The Gang Investigation Unit has advised correctional officers who work in the SHU that Northern Structure gang members conduct role call by shouting out to other Northern Structure gang members from pod to pod, and that they often use aliases when conducting these role calls. Accordingly, when correctional officers in the SHU observe validated Northern Structure members or associates participating in this type of activity, they often appropriately document the activity in the inmate's central file.

(Stewart Decl. ¶¶ 12-13.)

16

**United States District Court**
For the Northern District of California

Further, with respect to the two chronos drafted by defendant Soule in April 2006 and the chrono drafted by defendant Jones in August 2006, Stewart states:

> I have reviewed the Chrono prepared by Officer Soule on April 19, 2006, in which Soule describes Garcia's conduct on that date. I have also reviewed Garcia's account of his activities on that date, as set forth on page 8 of Garcia's complaint. The conduct described by Soule and Garcia is consistent with Northern Structure roll-call practices as described in the confidential memorandum dated April 9, 2004. Moreover, Garcia admits in his complaint that he attempted [to] determine the location of a validated Northern Structure member, Lopez (CDC No. E- 33132). This conduct is also consistent with the Northern Structure's attempts to continuously account for the whereabouts of its members and associates. It is also noteworthy that Garcia continued to participate in this type of activity even though his active-gang status had previously been continued based on the same conduct. The fact that he risked the continuation of his active gang status and his retention in the SHU indicates that there may have been some important gang related reason for the roll-call activity on that day, and that the communications were not simply casual conversation.

> I have reviewed the Chrono prepared by Officer Soule on May 10, 2006, in which Soule describes Garcia's conduct on that date. Inmates Shackleford, Lebron, and Pimentel are validated Northern Structure gang members, and the conduct observed by Defendant Soule, regardless of which of the inmates Garcia was shouting to, is consistent with the Northern Structure practice of conducting roll calls and monitoring the locations of other Northern Structure gang members within the building. And the Chrono also indicates that Garcia was providing information on the movements of inmate Pimentel (CDC No. J-89643), a validated Northern Structure member.

> I have reviewed the Rules Violation Report prepared by Officer Soule on May 20, 2006, in which he described Garcia's conduct on that date. The conduct described by Soule is consistent with Northern Structure roll-call practices and attempts to determine the locations of its members and associates. It is also noteworthy that Garcia continued to participate in this type of activity even though his active-gang status had previously been continued based on the same conduct. The fact that he risked the continuation of his active-gang status and his retention in the SHU indicates that there may have been some important gang-related reason for the roll-call activity on that day, and that the communications were not simply casual conversation.

> I have reviewed the Chrono prepared by Officer Jones on August 29, 2006, in which Jones describes Garcia's conduct on that date. The conduct described by Jones is consistent with Northern Structure roll-call practices and gang members' attempts to account for the locations of other gang members and associates. It is also noteworthy that Garcia continued to participate in this type of activity even though his active-gang status had previously been continued based on the same conduct. The fact that he risked the continuation of his active-gang status and his retention in the SHU indicates that there may have been some important gang-related reason for the roll-call activity on that day, and that the communications were not simply casual conversation.

(Stewart Decl. ¶¶ 14-17.)

17

United States District Court
For the Northern District of California

1    Plaintiff does not dispute the existence or reliability of the information in the chronos

2    and RVR.  Rather, he objects to the determination made by prison officials that such

3    information supports an inference of gang-related activity.

4    Based on the above, the Court finds plaintiff's disagreement with defendants'

5    assessment of the information documented in the subject chronos and RVR does not create a

6    triable issue with respect to plaintiff's claim that defendants drafted the chronos and RVR

7    because of personal animus against plaintiff, rather than because the documented activities

8    are sufficient to lead to an inference of gang activity.  Specifically, while plaintiff argues that

9    the documented activities reflect nothing more than harmless communications between

10   inmates, the evidence shows that defendants reasonably could conclude otherwise.

11                    c.    Legitimate Penological Purpose

12   Plaintiff argues that defendants had no legitimate penological purpose for placing the

13   alleged false documents in his central prison file.

14   Courts considering retaliation claims brought by prisoners must keep in mind the

15   potential for "excessive judicial involvement in day-to-day prison management, which 'often

16   squander[s] judicial resources with little offsetting benefit to anyone.'"  Pratt, 65 F.3d at 807

17   (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)).  In particular, courts should "'afford

18   appropriate deference and flexibility' to prison officials in the evaluation of proffered

19   legitimate penological reasons for conduct alleged to be retaliatory."  Id. (quoting Sandin,

20   515 U.S. at 482).  The Ninth Circuit has made clear that prisons have a legitimate

21   penological interest in stopping prison gang activity.  See Bruce v. Ylst, 351 F.3d 1283, 1289

22   (9th Cir. 2003)..

23   Here, the undisputed evidence shows defendants documented plaintiff's behavior and

24   communication with NS gang members in the interests of the safety and security of PBSP

25   and not because plaintiff had filed administrative appeals or otherwise expressed his First

26   Amendment rights, or because of personal animus against him.  In particular, the undisputed

27   evidence shows defendants' decisions to document plaintiff's interactions as possible gang-

28   related activity were in accordance with prison and DOM regulations, and were reasonably

based on prison officials' detailed knowledge of the prison gang system, as well as on the noted behavior and previous evidence gathered before plaintiff filed either of his 2006 administrative appeals. Accordingly, the Court finds defendants have shown a legitimate penological purpose for their actions.

d.     Conclusion

In sum, the Court concludes plaintiff has failed to present evidence that raises a triable issue of fact as to plaintiff's claim that the motive behind the drafting of the above-described documents by defendants Soule and Jones was retaliatory. Consequently, defendants are entitled to summary judgment on plaintiff's retaliation claim. Further, as plaintiff has not carried his burden on summary judgment to demonstrate the evidence presented establishes beyond controversy every essential element of his retaliation claim, plaintiff's motion for summary judgment on such claim will be denied.

3.     CDC 128-B Policy

Plaintiff claims defendants Kays and Higgerson, as members of the PBSP Gang Investigation Unit, have implemented a policy that requires subordinate staff members to draft, on a pre-printed CDC 128-B form, chronos that document evidence of alleged inmate activity that is so vague or inconsequential that it cannot support an inference of gang-related activity. Plaintiff asserts that the chrono policy has resulted in the violation of his constitutional rights because the chronos generated as a result of such policy have been relied upon by prison officials to retain him in the SHU as an active gang member in violation of due process.

As an initial matter, defendants contend plaintiff's claim cannot succeed because he has failed to present evidence either that the alleged policy exists or that defendants Kays and Higgerson are directly responsible for its implementation. In response, plaintiff argues that defendants have failed to provide him with requested discovery that would support his claims against Kays and Higgerson. The Court, however, has addressed plaintiff's discovery requests above, and found that there is no evidence to support plaintiff's assertion that defendants have in their possession, custody or control either a CDC 128-B chrono form or

19

**United States District Court**
For the Northern District of California

1    any other documents reflective of such a policy.

2        Defendants further argue that even if it could be shown that such a policy exists and

3    that Kays and Higgerson are directly responsible for its implementation, plaintiff's claim

4    nevertheless fails because he has not presented evidence that shows any of the chronos he

5    challenges in the instant action document activities that prison officials could not reasonably

6    infer are gang-related.

7        As discussed above in connection with plaintiff's retaliation claim, the Court has

8    found plaintiff has failed to raise a triable issue with respect to whether defendants' actions

9    were reasonable.  Similarly, the Court concludes that plaintiff's disagreement with

10   defendants' assessment of the information documented in the subject chronos does not create

11   a triable issue with respect to whether defendants drafted the chronos because of an alleged

12   unlawful policy requiring correctional officers to use a pre-printed CDC 128-B chrono form,

13   rather than because the documented activities are sufficient to give rise to an inference of

14   gang activity.   Further, as discussed above in connection with plaintiff's due process claim,

15   the Court has found plaintiff has failed to raise a triable issue with respect to whether plaintiff

16   has sustained any injury as a result of defendants' use of the allegedly false documents.

17   Consequently, even if the chronos were prepared in accordance with the allegedly unlawful

18   chrono policy, plaintiff's claim cannot prevail because he has failed to show he has suffered

19   injury resulting therefrom.

20       As plaintiff has failed to create a triable issue with respect to his claim that he has

21   suffered injury resulting from the implementation of an alleged unlawful policy to document

22   purported gang activity on a pre-printed CDC 128-B chrono, summary judgment will be

23   granted in favor of defendants on such claim.  Further, as plaintiff has not carried his burden

24   on summary judgment to demonstrate that the evidence presented establishes beyond

25   controversy every essential element of his claim of an unlawful policy, plaintiff's motion for

26   summary judgment on such claim will be denied.

27           4.    Conspiracy

28       Lastly, plaintiff claims that defendants conspired to implement a practice of

documenting false gang activity in order to deprive plaintiff of his constitutional rights. (Compl. at 31:10-14.)  In their motion for summary judgment, defendants argue that plaintiff cannot prevail on his conspiracy claim because he has not presented evidence that shows either that prison officials violated his constitutional rights or that they engaged in a conspiracy.  Plaintiff has not addressed defendants' argument, either in his opposition to defendants' motion for summary judgment or in his own motion for summary judgment.

Conclusory allegations of conspiracy will not suffice to support a conspiracy claim brought under § 1983. Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989).  Rather, a plaintiff must plead with particularity which defendants conspired, how they conspired, and how the conspiracy led to a deprivation of the plaintiff's constitutional rights. Harris v. Roderick, 126 F.3d 1189, 1195-96 (9th Cir. 1997).  To prove a conspiracy under § 1983, an "agreement or meeting of minds to violate [the plaintiff's] constitutional rights must be shown." Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989).

Here, plaintiff has not presented evidence sufficient to create a triable issue with respect to his claim that defendants conspired to deprive him of his constitutional rights. Specifically, the only support offered by plaintiff for his conspiracy claim is the conclusory allegation made in his complaint that a conspiracy existed.  Consequently, even if plaintiff had submitted sufficient evidence of a constitutional violation, which, as discussed above, plaintiff has failed to do, plaintiff has failed to present evidence to support his claim that any of the named defendants conspired to violate his constitutional rights.  Accordingly, summary judgment will be granted in favor of defendants on such claim, and plaintiff's motion for summary judgment on such claim will be denied.

### 5.   Conclusion

The Court concludes that plaintiff has failed to create, as to any defendant, a triable issue with respect to plaintiff's claims that defendants violated plaintiff's right to due process, retaliated against plaintiff, implemented an unlawful policy to document inmate gang-related activity, or engaged in a conspiracy to violate plaintiff's constitutional rights. Accordingly, summary judgment will be granted in favor of defendants on each of plaintiff's

United States District Court
For the Northern District of California

claims.[6]  Further, as plaintiff has not carried his burden on summary judgment to demonstrate the evidence presented establishes beyond controversy every essential element of any of his claims, plaintiff's motion for summary judgment will be denied.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1.  Plaintiff's motion for summary judgment is hereby DENIED.  (Docket No. 28.)

2.  Defendants' motion to file a brief in excess of twenty-five pages is hereby GRANTED.  (Docket No. 49.)

3.  Defendants' motion for summary judgment is hereby GRANTED, and judgment shall be entered in favor of each of the defendants.  (Docket No. 52.)

4.  Plaintiff's motions to compel discovery are hereby DENIED.  (Docket Nos. 29, 30, 31.)

This order terminates Docket Nos. 28, 29, 30, 31, 49 and 52.

The Clerk shall close the file.

IT IS SO ORDERED.

DATED: February 26, 2010

_____
MAXINE M. CHESNEY
United States District Judge

---

[6]In light of the above findings, the Court does not reach defendants' alternative argument that they are entitled to qualified immunity.  See Saucier v. Katz, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.")